IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| BAUTISTA CAYMAN ASSET COMPANY<br>Plaintiff,<br><br>v.<br><br>LYDIA ESPINAL RIVERA A/K/A LIDIA ESPINAL RIVERA A/K/A LYDIA ESPINAL COLLADO,<br>Defendant. | Civil No. 16-1672 (GLS) |

**OPINION AND ORDER**

Plaintiff Bautista Cayman Asset Company ("Bautista") filed a complaint for collection of monies and foreclosure of mortgage against Lydia Espinal Rivera a/k/a Lidia Espinal Rivera a/k/a Lydia Espinal Collado ("Defendant").[1] Docket No. 1. In May 2023, Bautista moved for summary judgment. Docket No. 138. Opposition, reply, and sur-reply followed. Docket Nos. 141, 144, 146, 151, and 157. After considering the parties' submissions and the applicable law, Bautista's motion for summary judgment is **GRANTED**.

**I.     Standard of Review**

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure is warranted when the moving party demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if "a reasonable jury, drawing favorable inferences, could resolve it in favor of the nonmoving party." Velázquez-Pérez v. Developers Diversified Realty Corp., 753 F.3d 265, 270 (1st Cir. 2014) (citation omitted). A fact is "material" if it potentially affects the outcome of the suit. American

---

[1] Despite the Court's best-efforts, Defendant is *pro se* as of February 5, 2024. See Docket No. 187. Defendant was appointed counsel on multiple occasions. All *pro bono* counsel, including her last counsel, showed competence and diligence in attending to Defendant's defense. But citing to irreparable differences and disagreements on litigation strategy all *pro bono* counsel withdrew. On January 31, 2024, the Court granted Defendant twenty (20) days to retain counsel or appear *pro se*. Docket No. 186. Defendant has not appeared since. All Court orders have been notified to Defendant at her address of record.

Steel Erectors, Inc. v. Local Union No. 7, 536 F.3d 68, 75 (1st Cir. 2008). However, "[c]onclusory allegations, improbable inferences, and unsupported speculation are insufficient to establish a genuine dispute of fact." Velázquez-Pérez, 753 F.3d at 270 (citations omitted). The moving party "may affirmatively produce evidence that negates an essential element of the non-moving party's claim" or "point to evidentiary materials already on file […] that demonstrate that the non-moving party will be unable to carry its burden of persuasion at trial." Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)).

## II.    Uncontested Facts

After examining the parties' submissions, the Court finds that the following material facts are not in dispute:

1. Bautista is an exempt, for-profit corporation, organized and existing under the laws of the Cayman Islands. Bautista's offices are registered in Maples Corporate Services Limited, P.O. Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands. Bautista's principal place of business is located at 301 Commerce Street, Suite 3300, Fort Worth, Texas 76102. The name and mailing address in the Commonwealth of Puerto Rico of the servicer of the assets acquired by Bautista is Capital Crossing Puerto Rico, LLC, 221 Ponce de León Avenue, 12th Floor, Suite 1204, San Juan, Puerto Rico 00917. Bautista's Statement of Uncontested Material Facts at Docket No. 138-1 ("SUF") No. 1.

2. Bautista, as successor-in-interest to Doral Bank ("Doral"), is the secured party of record for a loan secured by the collateral and credit facility object of the Complaint. On February 27, 2015, the Commissioner of Financial Institutions of the Commonwealth of Puerto Rico closed Doral and appointed the Federal Deposit Insurance Corporation ("FDIC") as their receiver. On March 27, 2015, the FDIC entered into an agreement with Bautista to acquire certain assets of Doral, including the loan and collateral documents described in the Complaint. SUF No. 2; Docket No. 141-1 at No. 42.

3. Defendant is of legal age, single, and a resident of San Juan, Puerto Rico. Defendant has a residential and mailing address at 618 Ave. Andalucía, Urb. Puerto Nuevo, San Juan, Puerto Rico 00920 (the "Property"). SUF No. 3.

4. Defendant is 87 years old. She received formal education up to high school level. She has lived in the Property since 1970 when she bought it together with her late husband, Andrés Rivera Torres, who

       passed away in 1988. Defendant's Additional Statement of Uncontested Material Facts at Docket No. 141-1 ("ASUF") No. 1.

5. Defendant is not in active military service. SUF No. 4.

6. On May 22, 2013, Doral initiated a foreclosure action of a 2005 mortgage on Defendant's Property (described more fully below). Civil Case No. KCD2013-1252. ASUF No. 19.

7. On May 20, 2014, Doral Recovery II, LLC, ("Doral Recovery") a subsidiary of Doral, and Defendant executed a commercial loan agreement whereby: (a) Doral restructured a previous loan agreement with Defendant, which had a balance of THREE HUNDRED FIFTY ONE THOUSAND NINE HUNDRED FIFTY FIVE DOLLARS AND SIXTY EIGHT CENTS ($351,955.68); (b) a promissory note was issued for the payment of the principal amount of TWO HUNDRED FIFTEEN THOUSAND TWENTY FIVE DOLLARS ($215,025.00) with maturity date on May 20, 2017; and (b) a promissory note was issued for the payment of the accrued interest and other accrued expenses at May 20, 2014 in the amount of ONE HUNDRED THIRTY SIX THOUSAND NINE HUNDRED THIRTY DOLLARS WITH SIXTY EIGHT CENTS ($136,930.68) with maturity date on May 20, 2017 (the "Loan Agreement"). SUF No. 5; ASUF Nos. 23-25; Docket No. 9-1.

8. The Loan Agreement was a repayment plan for the amounts the creditor claimed it was owed pursuant to a 2005 mortgage, and its subsequent modifications, on Defendant's Property (described more fully below). ASUF No. 24.

9. The amounts owed under the Loan Agreement are evidenced by a promissory note issued by Defendant on May 20, 2014, in favor of Doral Recovery II, endorsed to the FDIC and subsequently endorsed to Bautista, in the principal amount of TWO HUNDRED FIFTEEN THOUSAND TWENTY-FIVE DOLLARS ($215,025.00) (the "Promissory Note I"). SUF No. 6; ASUF Nos. 26-29; Docket No. 9-2.

10. The accrued interests and other charges under the Loan Agreement are evidenced by a promissory note issued by Defendant on May 20, 2014, in favor of Doral Recovery II, endorsed to the FDIC and subsequently endorsed to Bautista, in the principal amount of ONE HUNDRED THIRTY-SIX THOUSAND NINE HUNDRED THIRTY DOLLARS WITH SIXTY-EIGHT CENTS ($136,930.68) (the "Promissory Note II"). SUF No. 7; ASUF Nos. 26-29; Docket No. 9-3.

11. The Loan Agreement is guaranteed by the following:

(i) Mortgage note executed by Defendant on August 31, 2005, payable to the order of Doral, thereafter endorsed to Bautista, for the principal amount of $230,000.00, with interest rate of 8.95% and maturity date of September 1st, 2020 ("Mortgage Note"); as modified by an allonge executed on November 30, 2010, to modify the principal amount of $223,592.28 ("Allonge I"); and further modified by an allonge executed on May 20, 2014, to modify the annual interest rate to 10% ("Allonge II").

(ii) The Mortgage Note is guaranteed by a mortgage constituted through Deed Number 368 of August 31, 2005, before Notary Public Reinaldo Segurola Pérez recorded at page 61 of volume 920, property number 7, 168 of Monacillos, Registry of Property of San Juan, Third Section, 18th inscription ("Deed Number Three Hundred Sixty-Eight, First Mortgage"); modified through Deed of Modification and Partial Cancellation Number 434 of July 30, 2010, before Notary Public Magda V. Alsina Figueroa recorded at page 61 of volume 920, property number 7,168 of Monacillos, Registry of Property of San Juan, Third Section, 19th inscription ("Deed Number Four Hundred Thirty-Four (434) Modification of Mortgage and Partial Cancellation"); further modified through Deed of Modification Number 296 of May 20, 2014, before Notary Public Gadiel O. Rosario Rivera recorded at page 198 of volume 994, property number 7,168 of Monacillos, Registry of Property of San Juan, Third Section, 20th inscription ("Deed Number Two Hundred Ninety-Six (269), Modification of Mortgage and Mortgage Note") (collectively, together the Deed Number 368, the Deed Number 434, and the Deed Number 296, the "Mortgage"). SUF No. 8; ASUF Nos. 13, 15, 17, 18, 21, 22; Docket Nos. 9-4, 9-5, 9-6, 9-7, 9-8.

12. The Mortgage Note, which is secured by the Mortgage in favor of Doral, was subsequently assigned, endorsed to, and is currently in the possession of Bautista. SUF No. 10; ASUF No. 42; Docket No. 146 at No. 10.[2]

13. Bautista is at present the owner and holder of the Mortgage Note and the Mortgage. The obligations evidenced by such Mortgage

---

[2] Defendant denied Bautista's SUF No. 10 asserting failure to comply with Local Rule 56(e). But Bautista attached to the Complaint the endorsed Mortgage Note at Docket No. 9-4 (see also Docket Nos. 9-5 and 9-6). Bautista also submitted an Unsworn Statement Under Penalty of Perjury at No. 138-2 in support of this fact. Defendant did not refer to any admissible evidence that would controvert this fact.

       Note, as well as other obligations of Defendant, are secured by the Mortgage. SUF No. 9; ASUF No. 42; Docket No. 146 at No. 9.[3]

14. The Mortgage Note, through the Mortgage, encumbers the Property described as: "URBAN: Lot of rectangular shape that measures twelve point zero zero (12.00) meters at its front by twenty-one point zero zero (21.00) by its back, marked with number ten (10) of Block GY of the Puerto Nuevo Development, Property of Everlasting Development Corporation of Monacillos, Río Piedras, Puerto Rico, with a superficial area of two-hundred fifty-two point zero zero (252.00) square meters with boundaries by the NORTH, SOUTH, EAST and WEST, with lands of the Everlasting Development Corporation and facing East, with Main Street now Avenue or Andalucía Street of the Development. Upon this lot is erected a house made of concrete and blocks." Property number 7,168 (previously 6,7147), recorded at page 115 of volume 195 of Monacillos. Registry of the Property of Puerto Rico, Section III of San Juan. SUF Nos. 11-12.

15. Pursuant to the Mortgage, as modified by Deed Number 434, the amount of $223,592.28 would serve as the initial bidding amount for Property (in Spanish, "tipo mínimo"). SUF No. 13; Docket No. 146 at No. 13.[4]

16. The Defendant is the owner of the Property according to the Registry of Property. SUF No. 14.

17. On May 20, 2014, Doral and Defendant executed a pledge agreement, whereby Defendant pledged, assigned, delivered, and transferred the Mortgage Note to Doral, subsequently assigned to Bautista ("Pledge Agreement"). SUF No. 15; ASUF at No. 35.

18. On May 20, 2014, Doral and Defendant executed an assignment of rents agreement, whereby Defendant assigned the rents of the Property to Doral Recovery II, subsequently assigned to Bautista, in case of default under the terms of the Loan Agreement. ("Assignment of Rents"). SUF No. 16; ASUF at No. 36.

---

[3] Defendant denied Bautista's SUF No. 9 asserting failure to comply with Local Rule 56(e). But Bautista attached to the Complaint the endorsed Mortgage Note at Docket No. 9-4 (see also Docket Nos. 9-5 and 9-6) and the Mortgage Deed Nos. 368, 434, 296 at Docket Nos. 9-7, 9-8 and 9-9. Bautista also submitted an Unsworn Statement Under Penalty of Perjury at No. 138-2 in support of this fact. Defendant did not refer to any admissible evidence that would controvert this fact.

[4] Defendant denied Bautista's SUF No. 13 asserting failure to comply with Local Rule 56(e). But Bautista attached to the Complaint Mortgage Deed Nos. 368, 434, 296 at Docket Nos. 9-7, 9-8 and 9-9. Defendant did not refer to any admissible evidence that would controvert this fact.

19. Defendant's income tax return for 2013 reflected an income of $8,000. ASUF No. 33.

20. Defendant's income tax return for 2014 reflected an income of $7,900. ASUF Nos. 34.

21. Defendant signed six different legal documents on May 20, 2014. ASUF No. 37.

22. Defendant did not participate in the drafting of the legal documents executed on May 20, 2014. ASUF No. 38.

23. Defendant was not represented or otherwise accompanied by an attorney during her May 20, 2014 meeting with representatives of Doral. ASUF No. 39.

24. Defendant breached her obligations under the Loan Agreement towards Bautista by, among other things, failing to make the agreed payments. SUF No. 17; ASUF No. 44; Docket No. 146 at No. 17.[5]

25. As of May 15, 2023, Defendant owed Bautista the total amount of $323,578.56 which is distributed as follows: $210,114.42 in principal; plus interests in the amount of $85,650.89 which continues to accrue until full payment of the debt at $29.18 per diem; plus accrued late charges in the amount of $3,940.53; and any other advance, charge, fee or disbursements made by Bautista, on behalf of Defendant, in accordance with the Promissory Note I, the Loan Agreement as well as under the other loan documents, plus costs and agreed attorney's fees in the amount of $22,359.22 (collectively, the "Obligations under Promissory Note I"). SUF No. 18; Docket No. 146 at No. 18.[6]

26. As of May 15, 2023, Defendant owed Bautista the total amount of $136,930.68 in principle in accordance with the Promissory Note II, the Loan Agreement as well as under the other loan documents (collectively, the "Obligations under Promissory Note II", together

---

[5] Defendant denied Bautista's SUF No. 17. Defendant did not refer to any admissible evidence that would controvert this fact. In fact, in her Unworn Statement Under Penalty of Perjury Defendant does not claim to have completed the payments under the loan. See Docket No. 141-2.

[6] Defendant denied Bautista's SUF No. 18. Defendant did not refer to any admissible evidence that would controvert this fact.

       with Obligations under Promissory Note I, the "Obligations"). SUF No. 19; Docket No. 146 at No. 19.[7]

27.    On January 27, 2016, Bautista sent a Notice of Default to Defendant, informing her of her failure to comply with the payments as agreed in the Loan Agreement. Bautista accelerated the amounts owed and declared all the obligations under the Loan Agreement immediately and automatically due and payable in full. SUF No. 20; Docket No. 146 at No. 20.[8]

28.    Defendant has not cured the defaults detailed above. SUF No. 22; Docket No. 146 at No. 22.[9]

### III.    Discussion

Bautista initiated the instant collection action to enforce the terms of the Loan Agreement, Mortgage Note, Mortgage, and Pledge Agreement, and to seek the foreclosure of the Property. As this action is brought pursuant to this Court's diversity jurisdiction under 28 U.S.C. § 1332(a), Puerto Rico substantive law controls. Aleman-Pacheco v. Universal Grp., Inc., 638 F.App'x 15 (1st Cir. 2016). Contracts are binding when the following requisites are present: (1) the consent of the contracting parties, (2) a definite object as the subject of the contract, (3) and cause for the parties to assume the obligation. P.R. Laws Ann. tit. 31 § 3391.[10] See also Neca Mortg. Corp. v. A & W Dev. S.E., 137 D.P.R. 860, 871 (1995). Under the Puerto Rico Civil Code, "[o]bligations arising from contracts have legal force between the contracting parties and must be fulfilled in accordance with their stipulations." P.R. Laws Ann. tit. 31 § 2994. A loan agreement is an obligation in which one of the parties delivers to the other money or any perishable item, under the condition that it be returned in an equal amount of the same kind and quality. Id. at § 4511. A person who receives money or a perishable item on loan "acquires ownership, and is bound to

---

[7]    Defendant denied Bautista's SUF No. 19. Defendant did not refer to any admissible evidence that would controvert this fact.

[8]    Defendant qualified Bautista's SUF No. 20. Defendant did not refer to any admissible evidence that would controvert this fact.

[9]    Defendant qualified Bautista's SUF No. 22. Defendant did not refer to any admissible evidence that would controvert this fact.

[10]    On November 28, 2020, a new Puerto Rico Civil Code went into effect. See Colón-Torres v. BBI Hosp. Inc., 552 F. Supp. 3d 186, 193 n.5 (D.P.R. 2021). Because the loan documents at issue were executed prior to that date, the previous provisions of the Puerto Rico Civil Code apply.

return to the creditor an equal amount of the same kind and quality," including the agreed upon interests. Id. § 4571.

The Puerto Rico Civil Code and the Mortgage and Property Registry Act of 1979 govern the nature and effect of mortgages.[11] Soto-Ríos v. Banco Popular de Puerto Rico, 662 F.3d 112, 118 (1st Cir. 2011). A mortgage is an obligation secured by real property which is duly recorded in the Property Registry. P.R. Laws Ann. tit. 13 § 30294(d); P.R. Laws Ann. tit. 31 § 5042. The essential requirements of a mortgage are that (1) it be constituted to secure the fulfillment of a principal obligation; (2) the thing mortgaged be owned by the person who mortgages it; and (3) the person have the ability to freely dispose of the property. P.R. Laws Ann. tit. 31 §§ 5001-5002. A mortgaged property serves as security for the satisfaction of an obligation. Id. § 5043. When a debtor fails to pay the principal or interest due under a loan guaranteed by mortgage, a mortgage creditor may collect by foreclosing on the property that guarantees the satisfaction of the loan. DLJ Mortgage Capital, Inc. v. Vázquez-Pérez, 2021 WL 3668241, at *3 (D.P.R. Aug. 18, 2021).

The undisputed facts show that Bautista is entitled to recover the amounts owed under the Obligations and to foreclose on the mortgaged property. The parties executed the Loan Agreement on May 20, 2014. The amounts owed under the Loan Agreement are evidenced by the two promissory notes; Promissory Note I (principal amount of $215,025.00) and Promissory Note II (principal amount of $136,960.68) executed in favor of Doral Recovery II, endorsed to FDIC and subsequently to Bautista. There is also no dispute that payment of the amounts loaned under the Loan Agreement is guaranteed by the Mortgage Note and Mortgage on Defendant's Property, both of which were subsequently assigned, endorsed to, and are currently in the possession of Bautista. There is no dispute that the Mortgage has all the legal requirements. It is also undisputed that on May 20, 2014, Defendant executed the Pledge Agreement and the Assignment of Rents, both of which were also subsequently assigned to Bautista.

Nonetheless, Defendant claims that summary judgment is precluded because the loan documents are not enforceable. Defendant does not challenge the authenticity of the loan documents submitted by Bautista in support of the amounts claimed. She also does not challenge that Bautista is the secured creditor under the loan documents. Instead, Defendant avers that the loans granted by Doral were the result of "an elaborate loan-flipping scheme devised and executed

---

[11] A new mortgage law was enacted in 2015, but the mortgage at issue is covered by the 1979 law.

by [Doral] to strip away [] Defendant's equity in her home[] [and] generate fees[.]" Docket No. 141 at p. 10. And that she had "no meaningful choice" when executing the loan documents on May 20, 2014. Id. Defendant seeks that the Court deny enforcement of the loan documents as unconscionable. In support of her defense, Defendant submitted an Unsworn Statement Under Penalty of Perjury. Docket No. 141-2. Defendant states that she has no formal education post high school, that she did not participate in the drafting of any of the loan documents, that she did not have counsel present at the time in which she signed the loan documents, and that she did not understand the magnitude of the debt incurred in 2014 or the ramification of the multiple documents signed by her at closing. Docket No. 141 at 12-13. Defendant also submitted documents from the Puerto Rico Property Registry. Those documents establish that beginning in the year 1999, Defendant granted Doral and other financial institutions several mortgages on the Property. Docket No. 141-6. The Property was mortgaged in 1999, 2001, 2003, 2004, and 2005. Id. The loans guaranteed by those mortgages increased from $100,000 in 1999 to $230,000 in 2005. Except for a mortgage constituted in 1999 and the Mortgage at issue now (which was granted in 2005 and modified in 2010 and 2014), all mortgages were cancelled in due course.[12] Id. The terms of the last refinancing transaction in 2014, which resulted in the execution of the Loan Agreement, modified Defendant's debt to Doral from a residential loan with principal amount due of $223,592.28 subject to a term of 35 years, to a commercial loan with principal of $351,955.68 and a maturity date of 3 years. Defendant argues that, considering her income in the years 2013 and 2014, the 2014 refinancing transaction with Doral was doomed to fail. And that the loan documents were the result of an unconscionable "loan-flipping scheme," which should not be enforced.

Unconscionability is a "traditional, equitable remedy which will void an otherwise legally valid contract." Puerto Rico Elec. Power Auth. v. Action Refund, 515 F.3d 57, 98 (1st Cir. 2008). The First Circuit has found that such a remedy may be sought under Puerto Rico law. Id. ("Puerto Rico law recognizes such judicial intervention where a contract exhibits an excessively onerous quality that reaches the point of bad faith, and defeats those rules of collective conduct that must be observed by every honest and loyal conscience.") (quoting López de Victoria v. Rodríguez, 13 P.R. Offic. Trans. 341, 349, 113 D.P.R. 265 (1982)). Relief for an unconscionable contract may

---

[12] The Property has a first mortgage in favor of R-G Premier Bank of Puerto Rico, which was constituted in 1999 in the principal amount of $100,000.00. That mortgage has not been cancelled and constitutes a senior lien on the Property. See Docket No. 138-3.

be anchored in Article 1207 of the Puerto Rico Civil Code. Article 1207 provides that parties may agree on anything so long as their agreement does not contravene "the law, morals, or public order." P.R. Laws Ann. tit. 31 § 3372. See also In re Empresas Inabon, Inc., 358 B.R. 487, 520-523 (Bank. D.P.R. July 12, 2006) (applying the Puerto Rico Civil Code to adjudicate a claim of unconscionability), but see Rodriguez-Bird v. Santander Sec. Corp., 2010 WL 2541708, at *3 (D.P.R. June 17, 2010) (plaintiff failed to point out any "authority for the proposition that unconscionability may release a party from contract under Puerto Rico law."). There is nothing in Defendant's submissions to allow the Court to reject the enforcement of the loan documents for purported violations to morality, the public order, or the law.

A contract will not be enforced if it is "connected with an immoral act." Parker Waichman LLP v. Salas LC, 263 F.Supp.3d 369, 379 (D.P.R. July 13, 2017). The public order is "the set of preeminent values that guides the existence and wellbeing of a society. [It] groups and protects a predominant social interest due to its significance, the number of persons it affects, and the value of the right it tends to protect." Cecort Realty Development v. Llompart-Zeno, 100 F.Supp.3d 145, 161 (D.P.R. Apr. 24, 2015) (quoting Hernández v. Méndez & Assoc. Dev. Corp., 105 D.P.R. 149, 153-154 (1976)). Defendant has not argued— much less provided any evidence— that the loan documents constitute a violation of morality or the public order. Under First Circuit precedent, any arguments to that end should thus be deemed waived. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990); Goldstein v. Harvard Univ., 77 F. App'x 534, 536 (1st Cir. 2003); Van Kooten v. Marriott Int'l Inc., 2019 WL 13171060, at *7-8 (D.P.R. Jan. 11, 2019). But, in any event, Defendant has not submitted evidence that the loan documents negatively impact the values in today's society or important social interests, or that the terms of those documents impact a significant number of people. See Morales v. Municipio de Toa Baja, 19 P.R. Offic. Trans. 724, 740, 1987 WL 448260 (1987) (when determining whether a contract is void as contrary to public order, "[t]he applicable statutory rules seek to protect the public interest and not the contracting parties."). Neither has Defendant established that the agreements reached by the parties were abusive or one-sided. See Cecort Realty Development, 100 F.Supp.3d at 163 (public order prohibits the inclusion of abusive or one-sided contractual clauses). While the loans incurred by Defendant and guaranteed with a Mortgage on the Property increased through the years, it is uncontested that the loan granted in 2014 was the result of an agreement between Doral and Defendant so that Defendant could avoid foreclosure in 2013.

Naturally, the Puerto Rico Civil Code prohibits contracts that are contrary to law. P.R. Laws Ann. tit. 31 § 3372. There is no assertion by Defendant that the loan documents violate provisions of the Puerto Rico Civil Code or the Mortgage and Property Registry Act. As discussed above, the existence of valid consent is an essential element of a contract. P.R. Laws Ann. tit. 31 § 3391. Consent marred by error, violence, intimidation, or deceit may render a contract void. P.R. Laws Ann. tit. 31 § 3404. Voiding a contract for lack of consent is not taken lightly. Evidence of error, violence, intimidation or deceit is necessary, and it is presumed that the parties to a contract have acted in good faith. To rebut such a presumption, the party challenging the enforcement of the contract is required to provide evidence of intentional fault or bad faith. Gazelle v. MR 314 Fortaleza LLC, 2018 WL 1322155, at *6 (D.P.R. Mar. 12, 2018).

Defendant has not provided any evidence of bad faith by Doral. Defendant has not alleged, or provided any evidence, that she was coerced or fraudulently induced into signing the loan documents, that she was not allowed to review the loan documents before signing, or that she signed the loan documents based on misrepresentations by Doral. Defendant has merely argued that she is not highly educated, did not participate in drafting the documents, and was not represented by counsel. But mere inequality of bargaining power is insufficient to invalidate a contract. See Díaz-Rosado v. Auto Wax Co., Inc., 2005 WL 2138794, at *3 (D.P.R. Aug. 26, 2005) ("[m]ere inequality of bargaining power is insufficient to make a contract unconscionable."); Outek Caribbean Distributors, Inc. v. Echo, Inc., 206 F.Supp.2d 263, 268 (D.P.R. May 30, 2002) (no claim of fraud, coercion, or denial of an opportunity to seek advice of counsel, the contract did not "suffer from shortcomings that could render it invalid because of unequal bargaining power."); Stereo Gema, Inc. v. Magnadyne Corp., 941 F. Supp. 271, 277 (D.P.R. Sept. 23, 1996) (mere inequality of bargaining power will not make a contract unconscionable). And while the history in the Property Registry supports Defendant's claim that the loans incurred by Defendant and guaranteed with a mortgage over the Property increased substantially through the years, that alone cannot be the basis for a finding of fraud or deceit. The Court has not been provided any evidence from which to infer that the refinancing of Defendant's debt through the years was the result of bad faith or fraud. The Court cannot infer fraud from the existence of refinancing transactions alone. See e.g., Perez v. UBS Fin. Servs. Inc, 2016 WL 5462808, at *10 (D.P.R. Sept. 29, 2016)

(if no evidence of fraudulent statement or material misrepresentation by contracting party, contract cannot be deemed unconscionable).[13]

The Court acknowledges that the terms of loan documents at issue, which required satisfaction of $351,955.68 within three (3) years, were unrealistic given Defendant's payment history (which required the filing of a foreclosure action in 2013) and her income of approximately $8,000 for each of the years 2013 and 2014. But, with the record as it stands, the Court is unable to make a judgment as to Doral's motivations in approving such a transaction and much less that those motivations were to deceive. Defendant admitted that she signed the documents because she expected to have lower interest payments and that she would be able to repay the principal along with the interests. Docket No. 141-2. Absent evidence of error, violence, intimidation or deceit, the loan documents at issue are not unconscionable. See e.g., In re Empresas Inabon, Inc., 358 B.R. at 520-523 ("[c]learly, upon being unable to comply with the repayment of the loans and the agreement incorporating the same, debtors sank continuously deeper into debt, dissipating what at one time should have been substantial equity in their aggregated assets. […]. The end result is sad, but was not coerced or illegal.").

There is no dispute that Defendant breached her obligations under the Loan Agreement by failing to make the agreed upon payments. Summary judgment in favor of Bautista is warranted.

### III.    Conclusion

For the reasons discussed above, Bautista's motion for summary judgment is **GRANTED**. Judgment to be entered.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 30th day of September 2024.

s/Giselle López-Soler
GISELLE LÓPEZ-SOLER
United States Magistrate Judge

---

[13] Defendant relies on non-biding case law to support its claim of unconscionability. Docket No. 141 at pp. 7-11. But the cases cited by Defendant are distinguishable from the facts in this case. See Monetary Funding Grp., Inc. v. Pluchino, 87 Conn. App. 401, 867 A. 2d 841 (2005) (borrower proved that lender's actions were intentionally misleading); Hager v. American Gen. Finance, Inc., 37 F.Supp. 2d 778 (S.D.W. Va. 1999) (plaintiffs were deceived by being told that they had to purchase a mandatory life insurance to obtain a loan); Matthews v. New Century Mortg. Corp., 185 F.Supp.2d 874 (S.D. Ohio 2002) (defendants deceived plaintiffs by having them sign a loan agreement while thinking that they were signing documents for home improvement services).